**SABHARWAL LAW OFFICES**
Sunena Sabharwal, SBN 148237
1999 Harrison Street, Suite 2675
Oakland, California 94612
Telephone: (510) 273-8777

Attorney for Plaintiff
MARIE YVONNE THORNTON

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIE YVONNE THORNTON<br><br>　　　　Plaintiff,<br><br>vs.<br><br>COUNTY OF ALAMEDA; ALAMEDA COUNTY SHERIFF'S DEPARTMENT, ET AL.,<br><br>　　　　Defendants. | **CASE NO. C08-0314**<br><br>**DECLARATION OF SUNENA SABHARWAL IN SUPPORT OF MOTION TO ENLARGE TIME TO SUBSTITUTE REPRESENTATIVE; AND TO SUBSTITUTE REPRESENTATIVE**<br><br>**FILED WITH: DECLARATION OF ROBERT VALLE; MEMORANDUM OF POINTS AND AUTHORITIES; PROPOSED ORDER**<br><br>Date: 9-17-08<br>Time: 10:00 a.m.<br>Courtroom: G, 15th Floor<br><br>Related Motion For Dismissal is set for hearing on September 17, 2008 |

I, Sunena Sabharwal, hereby declare as follows:

1.　I am an attorney duly licensed to practice in all courts of the State of California and am the attorney of record for Marie Thornton, who died on March 31, 2008. I make this declaration based upon my personal knowledge and if called to testify, would testify as to the truthfulness of the matters contained herein.

2.　This action involves claims of violations of 42 U.S.C. section 1983. In summary, Ms. Thornton sustained severe injuries as a result of the use of a "K-9" during a search, in December of

1996. Ms. Thornton died on March 31, 2008. I received the coroner's report for the first time on July 23d or 24th, 2008. It appears that she died as a result of a toxic reaction to a combination of her prescription medications.

3. Marie and I spoke earlier in March while she was on vacation visiting family in Oregon. We agreed to meet after her return, and that she would call to schedule an appointment. I received a telephone message on April 18, 2008 from Mr. Valle to call him back. I was in trial again in Alameda County and retrieved the message during a break. I was in trial on the 21st and 22d of April and was unable to contact Mr. Valle until April 23d. He informed me that Marie had died and that the family was in shock over the death and that it was completely unexpected.

4. I recall that I called Ms. Widen the same day and informed her of Marie's death. I recall telling her that the family was in shock over the death.

5. I called Mr. Valle on April 25th. I did not immediately discuss with Mr. Valle the need for a representative, as I felt it was inappropriate to discuss such issues so close to her death and I was aware that the family was still grieving, something that we briefly discussed. I recall that I told Mr. Valle that he should contact me at a convenient time in about a week to discuss how this affects the case I was handling. I asked for a copy of the death certificate and Mr. Valle said that he did not have a copy, but would try to get one. He later informed me that it was not available due to it being held up until the completion of the Coroner's report.

6. I spoke to Mr. Valle ten days later on May 5, 2008. I inquired whether there was a will or an administrator of the estate. He informed me that he had no knowledge of either. We discussed how he, the daughters and mother of Marie Thornton felt about pursuing the action. He expressed his hesitation to pursue the action because it would be very difficult for the family, especially the daughters and mother. He felt that he would have to discuss the case with them and that these would be very painful discussions.

7. We spoke again on May 23, 2008. He told me that he had spoken to the daughters and mother, and that they did not wish to participate in any way in the case. I inquired whether he wished to pursue it. He felt unsure about it because it might affect the daughters and also mentioned that he had health problems and wanted to know what would be expected of him. I told him that he would have to make decisions about the case and that he would likely have to attend some court

hearings and possibly a trial. He wanted to think about it. We agreed that I should speak directly with Ms. Thornton's daughters and that he would call me when they were all available in the same location to discuss the matter.

8. On June 13, 2008 I again spoke with Mr. Valle. I believe that was the time that the daughters were present and we discussed the case. They told me that they felt unable to pursue the litigation and that they did not wish to have any involvement. They told me that they did not object to Mr. Valle pursuing the matter, so long as they would not have to be involved and reminded of their mother's death.

9. I later contacted Mr. Valle and requested their telephone numbers. I wanted to make sure about how they felt outside the presence of Mr. Valle. I left messages but did not receive returned calls. I also discussed whether Mr. Valle had made up his mind. We discussed reasons to pursue or not pursue the case. My impression is that he felt that Marie had been profoundly affected by the incident and felt that it was important to pursue. He felt that if the daughters did not object, it would be okay for him to pursue the matter.

10. On or about July 8th I informed Mr. Valle that there would be paperwork to complete in order to have him be appointed and that we could complete that at the first deposition session which I was scheduling for July 18th, 2008. There was also another deposition scheduled for Deputy White on July 25th. In a letter dated July 13, 2008, a Sunday, Ms. Widen stated that she would have to reschedule the deposition that was set on July 18, 2008. I was in a trial in Martinez, California on July 14, 15 and 16 and believe I was made aware of the letter during a call with my secretary. I dictated a letter from the courthouse providing three dates, July 21, 28 and 29. Another deposition was going forward of Deputy White on July 25th.

11. I contacted Mr. Valle to inform him that the deposition of Deputy Peck was going to be moved from the 18th but that I needed to speak to him immediately about completing documents necessary to make him a representative. I believe that I did not speak to him directly, but left a message. I did say that we would pay for parking and whether he needed any assistance getting to the office. I did not hear back. I was in trial on July 23, 2008. I had my secretary contact him to remind him of the July 25th date and that he was going to attend. He did not show up to the deposition. He later informed me, through my secretary, that he was not feeling well and had also

forgotten to attend. He informed her that he would come to the depositions on July 28th. He did not ask for any assistance. He did not appear on that day. I had my secretary call him during a break and he said that he was not feeling well. On August first he left a message that he apologized for not coming to the depositions, and that his health was rapidly declining and he had difficulty ambulating and moving. I received a message from his sister, Yvonne Mott, a few days later that she would be willing to assist him to attend future appointments and hearings so long as she had sufficient notice to get permission to take time off from work.

12. I spoke to him on August 6, 2008 to obtain details about his health status. He explained to me the history that is described in his declaration, that his decline in health began with kidney cancer and has progressed to other diseases which affect his ability to ambulate. I was unaware that he needed but was unable to obtain a wheelchair. I inquired whether he thought that he could act as a representative. He thought that he could once he has a wheelchair, which he hopes to have soon. Alternatively, we discussed the possibility of having his sister act as representative.

13. I had originally anticipated having a declaration of Mr. Valle requesting that he be appointed representative, completed and executed at the July 21, 2008 deposition, for submission to the court. The above events prevented that from happening.

14. The Court will want to know why I did not pursue filing of a request for enlargement earlier. The combination of a series of events resulted in my failure to do so. I fully expected to have a motion for substitution completed and filed by July 22d. I should have done it sooner, but the delays and changes of the depositions were a contributing factor. Mr. Valle was unsure of his desire to proceed until around the end of the first week of July. My end of June and beginning of July became extremely busy, complicated by some personal events as well. My three and a half year old daughter was hospitalized in late June for four days due to complications of a birth defect which makes her susceptible to pneumonia. I had to stay with her in the hospital, rotating shifts with my husband. She could not be left alone because she would try to run out of her hospital room and I did not want her to be alone and placed in restraints. Within a week after she got out she had high fever again, and we were afraid that the pneumonia was still there. We had to make appointments with specialists and have her evaluated again; I had to rearrange my schedule to accomplish that. This puts me into the first third of July, when I had two trials to complete in the next two weeks.

15. There is no prejudice to the Defendants. Despite that I informed Ms. Widen in my telephone call to her on July 23, 2008, that the family was in shock and grieving, the very next day she filed a notice of the death with the court. Many of the reported cases involve situations where deaths occurred many months before the notice was filed, and courts have found no prejudice (See, memorandum of points and authorities.) There has been no delay attributable to a failure to appoint a representative.

16. Ms. Widen and I had agreed prior to and confirmed again at the Case Management Conference, to informally exchange documents. I did not receive documents, a video of my client taken by the police or any other records until a day or two before Deputy White's July 25th deposition.

17. The Coroner's report was produced at that time and it appears that Ms. Thornton died as a result of the combination of prescription drugs she was taking, many of which were directly attributable to the injuries she sustained as a result of the events giving rise to her claims. No consent for release of this information to the defendants was ever given, so I question how they obtained a copy of this report. In any event, the cause of death places an additional aspect of this case which needs to be addressed with the family members.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct to the best of my recollection and that this declaration was executed in Oakland, California on August 7, 2008.

/S/
Sunena Sabharwal